O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAMI CHEYENNE WALKER,<br><br>    Plaintiff,<br><br>  v.<br><br>BOARD OF REGENTS, UNIVERSITY OF CALIFORNIA,<br><br>    Defendant. | Case No.: 2:22-cv-03279-MEMF (AFMx)<br><br>**ORDER GRANTING MOTION TO DISMISS [ECF NO. 15]** |

  Before the Court is the Motion to Dismiss filed by Defendant the Regents of the University of California. ECF No. 15. For the reasons stated herein, the Court GRANTS the Motion to Dismiss WITHOUT LEAVE TO AMEND.

///

///

1

I. **Factual Background**[1]

On May 28, 2015, Plaintiff Arami Cheyenne Walker ("Walker"), then a student at the University of California, Los Angeles ("UCLA")[2], was approached on campus by a photographer in between classes. Compl. at 1. Walker agreed to be photographed. *Id.* In a process that took approximately five minutes, the photographer took a few images and asked for Walker to sign a release. *Id.* The release authorized use of the images so long as they were not defamatory. *Id.* The photographer did not offer Walker any compensation. *Id.*

On March 20, 2020, Walker received a text message from an individual that Walker's image was being used for a campaign to raise money for the COVID vaccine. *Id.* at 1–2. In the photo, Walker's eyes are half closed and she looks potentially ill. *Id.* at 2. On the photo was a caption reading, "UCLA is doing something about COVID." *Id.* This image was featured on UCLA's website, as well as on its Facebook and Instagram pages. *Id.* In response to this campaign, Walker received calls from her bandmates and friends, concerned that she had COVID. *Id.* Walker is a musician, author, and educator that for the most part interacts privately and publicly with citizens through concerts, curated exhibitions, and teaching. *Id.*

Shortly after, another individual copied the Facebook campaign to Walker's public Facebook wall and said, "You are the Poster girl of Covid." *Id.* Walker reported this to Facebook as harassment. *Id.* This individual continued to post the campaign and refused to take it down at Walker's request. *Id.* As a result, Walker felt forced to delete her Facebook account. *Id.*

On March 25, 2020, Walker contacted Jennifer Wheelock ("Wheelock") at the UCLA External Affairs Office, stating that she would like her images deleted and the release form terminated due to the fact that she was being bullied online. *Id.* That same day Wheelock replied that

---

[1] The facts set forth below are taken from the Complaint. ECF No. 1 ("Compl.").

[2] While Walker does not explicitly allege in her Complaint that she was a student at UCLA at the time, the Court infers this fact based on her allegations that the photograph was taken "between classes" and her request that she be able to "retain her privileges as an alumni and retain articles written about her work during and after her time at UCLA." Compl. at 1, 5.

1  Walker's images were deleted and removed from the website and that the release form was
2  terminated. *Id.*
3        On March 12, 2022, Walker received an Instagram message from a third individual that
4  Walker's image was on a large-scale banner on the Arthur Ashe Building for student health.
5        On March 12, 2022, Walker sent an email to Shilo Munk ("Munk"), UCLA's Chief of Staff
6  for Strategic Communication, stating that her image was still in use and she needed it to be removed.
7  *Id.* On March 18, 2022, Munk emailed Walker the release form from 2015 and stated that it was the
8  reason Walker's image was still in use. *Id.* However, because of her demand, Munk responded that
9  he would have the images removed from UCLA's campus and website. *Id.* Walker replied that she
10 would like to be compensated for the continued use of image since she had initially requested to
11 have it taken down in March of 2020. *Id.* at 3.

## II. Procedural History

      On May 13, 2022, Walker filed this action against Defendant Board of Regents, University of California (the "Regents")[3] for: (1) appropriation, CAL. CIV. CODE § 3344; (2) breach of contract; and (3) negligent infliction of emotional distress. *See generally* Compl. Walker alleges that the Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction). *Id.* at 1. All of her claims are state law claims and she does not allege any other basis of subject matter jurisdiction.

      On August 8, 2022, the Regents filed the instant Motion to Dismiss. *See generally* ECF No. 15 ("Mot."). This Motion was fully briefed on September 14, 2022. *See* ECF Nos. 17 ("Opp'n"), 22 ("Reply"). The Court heard oral argument on September 29, 2022 and took the matter under submission. ECF No. 24.

## III. Applicable Law

      The "[f]ederal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal quotation marks omitted). The plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of*

---

[3] Defendant indicates in its Motion that it was erroneously sued as "Board of Regents, University of California."

*Am.*, 511 U.S. 375, 377 (1994). A "court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *U.S. v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir. 2002). Under the Federal Rules of Civil Procedure Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction.

District courts have diversity jurisdiction over civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. "There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973). The Ninth Circuit has extended this proposition to state agencies, finding that "neither a state nor a state agency [can] be a party to a diversity action." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 (9th Cir. 2011) (internal quotations omitted).

### IV. **Discussion**

#### A. Walker cannot establish subject matter jurisdiction over the Regents.

Walker alleges that the Court has subject matter jurisdiction under diversity jurisdiction, as she is a citizen of Washington and the Regents is a citizen of California. Compl. at 1. The Regents argues that this action should be dismissed pursuant to the Federal Rules of Civil Procedure Rule 12(b)(1) because the Regents is not considered a citizen of California for the purpose of establishing diversity. Mot. at 4.

*ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1292 (9th Cir. 1993) supplies the binding test for the Ninth Circuit to determine whether an entity is an "arm of the state" for purposes of 11th Amendment immunity, and thus may not be considered a citizen of that State. Both the Regents and Walker cite to this test in their respective briefing. *ITSI* provides:

> To determine whether a governmental agency is an arm of the state, the following factors must be examined: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has power to take property in its own name or only the name of the state, and [5] the corporate status of the entity. To determine these factors, the court looks to the way state law treats the entity.

*ITSI*, 3 F.3d at 1292; *see also* Mot. at 11; Opp'n at 1–2.

It is well established that neither a state nor an arm of the state is a citizen of that state for diversity purposes. *See Moor*, 411 U.S. at 717; *State Highway Comm'n of Wyoming v. Utah Const.*

*Co.*, 278 U.S. 194, 199 (1929); *Postal Tel. Cable Co. v. State of Alabama*, 155 U.S. 482, 487 (1894). The question presented by this case is whether the Regents constitute an arm of the state. The 11th Amendment also prohibits suits against a state. *ITSI* supplies the binding test for determining whether an entity is an arm of the state for purposes of 11th Amendment immunity. *ITSI*, 3 F.3d at 1292. Both parties cite to *ITSI* as the test this court should apply in determining whether the Regents is an arm of the state for purposes of diversity jurisdiction.

Although *ITSI* is not about diversity, and technically does not establish the test to be applied for diversity purposes, this Court finds that it is appropriate to apply. The jurisprudence of the 11th Amendment and diversity jurisdiction both seem to be concerned with whether a suit is effectively against the state itself. Both the 11th Amendment and the Judiciary Act of 1789, which first established diversity jurisdiction, were enacted at the founding of our nation. There appears to be no reason why the same factors that determine whether an entity is an arm of the state for purposes of the 11th Amendment would not apply to determining whether that entity is an arm of the state for purposes of diversity. And numerous other courts have applied the *ITSI* test in just this fashion. Since *ITSI*, the Ninth Circuit has repeatedly held "that the University [of California] is an arm of the State of California under the test of *ITSI TV Prods. v. Agric. Ass'ns*, 3 F.3d 1289, 1292 (9th Cir. 1993)." *See, e.g.*, *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997); *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982) ("[T]he University of California and the Board of Regents are considered to be instrumentalities of the state."). Pursuant to the law of the circuit doctrine, this Court defers to the Ninth Circuit's determination that the Regents of the University of California is an arm of the State and shall not independently apply the test in *ITSI* to the facts here. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point is the law.").

While the Court appreciates the serious nature of the harm Walker is alleged to have suffered, for the reasons stated above, the Court finds that Walker is unable to establish subject matter jurisdiction on grounds of diversity. As the Court stated at the September 29, 2022, the Court

advises Walker that it makes no determination as to whether this action might be properly brought in state court. In any event, this action is hereby DISMISSED.[4]

## V. Pro Se Resources

As discussed at the hearing, the Court appreciates the challenges that come with self-representation and wishes to provide guidance to Walker on the following resources, which she may wish to consult:

- Information on the Federal Pro Se Clinic in Los Angeles, which offers on-site information and guidance to individuals who are representing themselves, can be found at https://prose.cacd.uscourts.gov/los-angeles.
- Information and resources on representing yourself from the LA Law Library, available at the https://www.lalawlibrary.org/.
- General information on how parties may represent themselves in civil cases in the Central District of California can be found at https://prose.cacd.uscourts.gov/.

## VI. Conclusion

In light of the foregoing, the Court hereby GRANTS Defendant's Motion to Dismiss WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED.**

Dated: October 13, 2022

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[4] The Regents additionally argues that Walker's claims should be dismissed on grounds of sovereign immunity under the 11th Amendment and under the Federal Rule of Civil Procedure 12(b)(6). Furthermore, the Regents argue that Walker fails to state a claim for relief because: (1) she fails to state a claim for appropriation; (2) she consented to the use of her image; and (3) she fails to plead that the Regents owed a duty to her. Mot. at 7–10. However, as the Court "determines . . . that it lacks subject-matter jurisdiction [and thus] must dismiss the action," the Court cannot address these arguments. FED. R. CIV. P. 12(h)(3).